22222. Just looking at it. Thank you, Your Honor. I think that's good. You might want to do both microphones. Thank you, Your Honor. May it please the court. A concha shot for the petitioner under the supervision of tag duly seated at council table. The Supreme Court has repeatedly held an immigration cases, including last term in this Chavez against Garland, a case involving the form of a notice to appear that quote, If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them. In this case, the government has cut corners again and again when dealing with Mr Gutierrez. It removed him from the Dominican Republic without satisfying their extradition conditions. It served Mr Gutierrez with a notice to depart while he was still in state custody before he had had any opportunity to leave. It then served two additional notices. You heard me in the prior matter. Ask the question, what is the error you want us to assign? What is the error? Well, Your Honor, the notice to appear in these removal proceedings are procedurally defective. They were issued prematurely without Mr Gutierrez having an opportunity to depart. So he is simply not removable as charged. Maybe another way of asking the question is, what's the source of law that you're relying on for the assertion that he's entitled to a particular kind of notice at a particular point in time? The INA says that applicants for admission are removable. And the government agrees that a non-citizen must be an applicant for admission before they can be removed. If we agree with you that there was error and that therefore we have to dismiss this third removal petition, won't the government just file a fourth one? The government may file a fourth one following- The government isn't giving up on this case. They want him out of the country. Yes, Your Honor. The government can issue a fourth notice to appear after following the proper procedures, which include giving Mr Gutierrez notice that if he fails to voluntarily depart- And what would your client do given that notice? Your Honor, I haven't spoken with my client about what he would do in that situation. But were he to voluntarily depart, I want him to have that opportunity, which he wasn't given in any of these prior proceedings. He was in custody. He was not told that if he were to depart, the government would facilitate leaving custody and potentially taking him to the airport, etc. He just had no opportunity to do so. There are two main arguments, as I understand it, in answer to these questions, is that he was not given a reasonable opportunity to depart. He wasn't given notice, whether that's written notice or any form of notice that's adequate under even the BIA's own precedent. Is that right? And there are other issues relating to the hearing and so on, but those are the two main ones. Yes, Your Honor. Those are the two main problems here. He was not given notice. Under Bada Lamenti, the government must provide a non-citizen with notice that they have the right to voluntarily depart and the consequences of failure to voluntarily depart. Here, the government made no attempt to provide Mr Gutierrez with that information. So you used the word attempt. So there is a declaration from Agent Hernandez of DHS where it says, and it's not rebutted, that they attempted when he was, I guess, in this facility, correctional facility, to let him know, but he refused to say anything. He refused to answer any questions. Is that right? Yes, Your Honor. This information from Officer Hernandez all occurred in November following the issuance of the third notice to appear, which occurred in October. So the email in which the government tells Mr Gutierrez's counsel that they would potentially assist him if he were to choose to voluntarily depart occurred on November 22nd. I'm sorry, so maybe I'm mistaken. There's a prior June 3rd, 2019 attempt by ICE to interview your client regarding his intent to depart voluntarily from the U.S.? But he refused to answer any questions? Your Honor, in that particular instance, the government merely asked Mr Gutierrez if he would leave, and that's not sufficient. They did not inform him that he had a right to voluntarily depart. Where does this say that? I mean, what I have in front of me, but maybe there's something else that I've missed, is at the time, ICE attempted, to use your word, to interview Mr Gutierrez regarding his intent to depart voluntarily from the United States. Your Honor, there's no actual record of the conversation. But that is a unrebutted declaration. So we have a declaration. We've got a record, the administrative record, that says that there was an attempt, and I think what you're saying is that's wrong. How do I know that that's wrong? Your Honor, I would contend that that's wrong for two reasons. So first, merely attempting to interview Mr Gutierrez as to his intentions to leave is not sufficient to satisfy the standard of notifying an immigrant that they have a right to voluntarily depart and the consequences of failure. Well, they didn't get a chance to interview him. They might have told him that if he sat for the interview. Well, Your Honor, that's why in most cases, in every reported case under Bada Lamenti, the government has provided written notice with this information. It hasn't had an unrecorded sort of colloquy with the defendant. And the BIA and the immigration judge in fact found that this was not sufficient because they dismissed a second notice to appear occurring after this June 2019 discussion. So I want to ask a slightly different question. If these removal proceedings that are the subject of this appeal are terminated, what assurance does the government have that appellants will in fact depart from the United States? Your Honor, the government obviously does not have any sworn statement from Mr Gutierrez that he will depart, but the government has the assurance that if he does not voluntarily depart, they can bring new removal proceedings. Yes. And so the relief you're seeking is reverse the BIA, have the immediate proceeding dissolved or dismissed. The government gives written notice of the consequences of not departing in some timeframe for departing, which you deem sufficient under the fair and reasonable. And you don't know whether your client would take that opportunity or not. You've told us. But assuming he doesn't, then then issue a fourth NTA and proceed exactly as we have been. And he's he's in detention this whole time. Yes, Your Honor. He was in detention through the issuance of all three notices to appear. He has currently been released due to COVID protocols, but that was in 2021 when these removal proceedings were fully underway and he was waiting to finish them. And is he out of detention now? Yes, he is currently out of detention. So he could voluntarily depart any time, couldn't he? Well, Your Honor, he has. Could he just leave? It would be difficult, given that he has these removal proceedings pending, that he wants to see them through to the final outcome. That's the ultimate goal of the proceeding, right? Well, Your Honor, not necessarily. I mean, he also has other allegations that he was denied a suppression hearing. Oh, you mean here he was denied a suppression hearing? Yes. So during the after the third NTA issues, and then we do have that written email. I think clearly saying you should you can voluntarily depart. And the consequence of you doing so is that will dissolve this proceeding. And his lawyers first react. The first reaction from counsel was great. Thanks so much. We're totally going to take advantage of that. And then comes back and says, actually, now that I've talked to my client, we're not taking advantage of that. That's not what he said. But that was the effect of it. So, I mean, it's just a little unclear what form over substance is going to do here. He's been given an opportunity. He didn't take it. Even as we sit, he's had the ability to depart and hasn't. Even as we sit here, if you get exactly the relief that you're looking for, you're telling us you can't know for sure whether he's going to depart. So I suppose I'm wondering what law, again, sort of what source of law, what law compels the specific notice that you're looking for? I mean, I suppose you say it's an interpretation of valid amending. And what harm flows from that notice coming after the issuance of the NTA? Well, I think there's two points on this, Your Honor. First, in regards to his not leaving in November or not working with the government to leave, there is a case from the Eastern District of New York, Brown, in which an immigrant received both an opportunity to voluntarily depart and removal proceedings. And that was held that being in both or having both options was confusing. And that there should be one directly followed by the other. So procedurally, that would not be sufficient. You're saying as a matter of due process or what? As a matter of fulfilling the fair and reasonable opportunity to depart standard. So it's a statutory matter as interpreted by the BIA in valid amending as you want us to understand a sort of gloss on that decision? Yes. But this wouldn't be confusing to Mr. Gutierrez. He's been through this procedure several times. Yes, Your Honor. They've attempted to remove him several times, but timing here really does matter. When he's issued a notice to appear and the initiation of removal proceedings while he's in state custody, merely asserting that he has a right down the line to voluntarily depart doesn't mean that he knows when that opportunity will come. So does Mr. Gutierrez really need a notice to tell him that he has the right to voluntarily depart when he's free to do so now? Does he need a notice to tell him what he obviously knows, hence this lawsuit? Your Honor, I think that it would be very simple to require the government to provide notice. But presently at this moment, if the third notice to appear were dismissed, he likely would not need further notice for him personally to be involved. Why do you say that? Why do you say that if it were dismissed, he would not require further notice? I mean, we believe that What are the breadcrumbs that would let him know that he is on notice? I mean, I believe that he should be provided notice. But under Bada Lamenti, there is not a specific requirement that a written notice is provided at a certain date. And so given Judge Pooler's questions about doesn't he know, potentially the government could argue that he knows. And that would occur under a fourth notice to appear in which they allege all of these facts. But he knows based on what? The email that the government had referred to. Okay, so Agent Hernandez. Yes. So counsel would concede that he knows, right, that he can voluntarily depart? Your Honor, I would concede that he knows that he could voluntarily depart. But not that he presently knows that he would be able to voluntarily depart while in removal proceedings. That is a different procedural posture for his departure that would potentially still cause him prejudice down the line should he apply for a waiver to another country. He knew that when the email was sent. Because the email said expressly, if you depart, we'll dissolve these removal proceedings. So I don't understand what's different between that and what you're saying would be the case now. Well, Your Honor, the government has since continued these removal proceedings. And so he is presently in removal proceedings. He wouldn't just be free to go at this moment. May I ask you a question? Is it possible to be provided notice by an immigration judge? In other words, can an IJ removal proceeding, however it ends up, be the basis for providing a petitioner with notice that he or she has got a reasonable opportunity to depart? Potentially, Your Honor. But that didn't happen in the second notice to appear proceedings. Because there needs to be more than just a judge or an immigration officer or even a written notice saying you have the right to depart. There's cases including, I believe, Noguera Pino in the Northern District of California that say there needs to be an explanation of the consequences of failure. And in addition to specifics about what that opportunity to depart and the timeline entails. So you mentioned some out-of-circuit cases, I take it. There's very few. But what is the positive law? That is, was there a regulation or a BIA decision that says what you just said? Bada Lamenti does say that this notice should be provided to an immigrant, and that's a BIA decision. Sure, provided by – to someone. But my question is who can provide that? So can an IJ let a would-be petitioner know that the petitioner has an opportunity to depart, to leave? Your Honor, I think that there's not a specific case on this point. Because Bada Lamenti cases, that is, cases where an immigrant is brought involuntarily into the country and then put into removal proceedings, are exceedingly rare. There's a handful of reported cases. Let me switch the question. Tell me why it cannot be the case that an IJ can provide the form of notice, whether in writing or not. I don't think it really matters. But the form of notice that you say is lacking here. I'm not arguing that an IJ could not provide that. I'm arguing that it did not happen in the second notice to appear in the present instance. So it could happen, you concede that. I concede that, because Bada Lamenti is a sort of tautology of the circumstances test. In that case, they looked at the written notice provided to the immigrant. They looked at the timeline provided by the government, the date on which the letter was received, the date on which removal proceedings were begun. They looked at a variety of factors. And by that – and I think that makes sense – but by that concession, notice can be given after the NTA issues, after the proceedings have commenced. No, Your Honor. I think an IJ – That's the logic of that, isn't it? Well, I think an IJ in, say, proceeding two could theoretically have provided notice sufficient that that notice would be dismissed and then a certain amount of time would pass. And then if the immigrant had not departed, then a new notice to appear could be issued. I don't think – and there's no evidence to suggest in the regulations that that information can be provided later, because under 8 CFR 1003.30, the notice to appear must contain all the factual allegations, and the new allegations have to undergo a certain procedure, which was not done here. A notice to appear can only be provided to an applicant for admission. And Bada Lamenti concerns what has to happen before a noncitizen becomes an applicant for admission. And in this instance, those procedures did not occur, so Mr. Gutierrez is not an applicant for admission at the issuance of the third notice to appear. Right, but if then the IJ gives the notice and an opportunity, as you've just described, and he doesn't depart, then the proceeding can continue. The proceeding – I don't think the proceeding could continue. The proceeding would have to be dismissed, because the notice to appear itself was unsound. It was issued against somebody who was not an applicant for admission. That notice would be dismissed, and potentially a new notice to appear could be issued after that noncitizen was made an applicant for admission by failing to voluntarily depart. The error here is that the third notice to appear was issued before Mr. Gutierrez was ever made an applicant for admission. And so he's not – he was not removable under the INA at that time. Okay. Thank you. Yeah, I'm ready to hear from the government. We'll hear from the government. You've reserved some time for rebuttal. May it please the court. My name is Jonathan Robbins. I'm here on behalf of Merrick Garland, the Attorney General. Good morning to all of you. Good morning. The court asked the parties to address two issues in the briefing. The issue of petitioner's inadmissibility to the United States and the issue of res judicata. So I'll address each of those issues in turn. Can I talk about some of the facts of this case? Yes. Appellant claims that he was kidnapped and brought here in order to be removed. Is that correct? Not to my knowledge, Your Honor. He was brought here, right, by the government? He was brought here. And then the government brought him here so they could remove him. Would you explain to me why this isn't just crazy? No, Your Honor. It's a technical term. It's not crazy, Your Honor, because the reason he was paroled into the United States is because he absconded to the Dominican Republic to avoid a criminal sentence. So you brought him here and he served his sentence, and now he wants to depart. Why won't you let him? We would be happy to let him. In fact, we've offered to let him multiple times, but it should be apparent from this record at this point that this is an individual who does not intend to depart. So let's talk about the issue of inadmissibility. Okay? Now, the parties agree that matter of badalamente applies in this case, and that means that the petitioner has to be given a reasonable opportunity to depart in order to be deemed an applicant for admission. Now, the petitioner has responded by saying that he wasn't given adequate notice, but that's not correct. Okay, first of all, there's nothing in the statute or regulations that requires the government to give notice of an opportunity to depart, and it wouldn't make sense for that to be a requirement of the law because the requirement that the government give somebody an opportunity to reasonably depart is a creature of case law, right? In other words, we've said if we bring you here against your will, before we can charge you as an applicant for admission, we have to give you an opportunity to depart because you were brought here against your will. That's badalamente. Exactly, badalamente. That's the case law we're talking about. Exactly. So now the way it comes up in proceedings is it's a defense that somebody will raise when the government charges somebody as inadmissible. In other words, if you believe that the charge of inadmissibility is premature, you can assert that you haven't been given an opportunity to reasonably depart, which is exactly what the petitioner did in this case in 2013 when the first NTA had issued. So the notion that he wasn't on notice is not accurate. He's the one that first raised the issue of the opportunity to depart as a defense to his first and second NTAs. So he was plainly on notice even before the government tried to contact him to arrange his departure. He's the one that initially raised it, and that's the way it arises in these proceedings. So the notice that the petitioners are trying to talk about, it doesn't exist in the law. There's no statute or regulation that requires the government to notify us. Are you going to let him depart now? I'm sorry, yes? Are you going to let him depart now, you being the government, not you personally? Well, we're in an unusual situation, right? We're now in a case where he's arguing, don't make me leave because I need to be able to leave, right? I mean, technically he's been released from custody since 2021. So there's nothing keeping him here if he wanted to voluntarily leave? He could get on a plane today. That's exactly right. So the notion that he somehow can't because of the removal proceedings, the government's representation is that is not correct. The government wouldn't interfere with his leaving voluntarily at this point? That's correct. And the Supreme Court has said that individuals can continue to pursue their petitions for review and that it's not mooted out by being removed from the country or departing the country. Can I add just the logic of bedeliment? I always want to put the L before the D. I mean, there, the decision ends with, you know, it'll go back to the IJ, and the IJ will take evidence on the question of whether he understood and was given a chance and was impeded in any way. And the final line is if on remand the immigration judge determines that he was not given a fair and reasonable opportunity to depart, exclusion proceedings should be terminated as premature. I mean, in a sense what you're saying is what the BIA should have said there is now he certainly knows. And so if he doesn't depart, then continue to proceed. But I'm not saying this is a holding necessarily, but it does seem the logic of that opinion as a formalistic matter suggests that whatever the notice now is, you start over. Well, the government's point here is that there's no official requirement that, I mean, the petitioners refer to a bedelimente letter in their briefing. No such bedelimente letter exists, right? Do they exist in the world? Because it seems like it would be a good idea. Well, first of all, they were certainly notified in writing when the deportation officer specifically sent them an e-mail saying we're trying to arrange your departure. We've been forced to start proceedings against you again. If you want these proceedings to go away, we'll happily do that if you agree to depart. You know, that itself is written notice. He had that conversation? He had that conversation? That's in the record at page 130, I believe it's 131 of the record. It's e-mailed to counsel. Yeah, it's an e-mail to petitioner's counsel saying we'll have, it says if you can provide an affirmative yes and a time frame for his departure under safeguards, the department would move to terminate proceedings without prejudice so long as you and your client move forward with his departure. Your friend on the other side says there's a timing issue. Well, the timing, okay, well, let's look at the timing. When was petitioner certainly on notice of the requirement to depart? It's certainly as early as 2013 when he first raised the issue to the board in his appeal, aren't challenging his original inadmissibility proceeding. Now, at that point, I mean, early in proceedings, at one point he said that he would need seven to ten days to depart. I mean, we're well beyond seven to ten days at the point that this e-mail comes out. So, I mean, the question of notice here. Where is that in the record, by the way, this acknowledgement that you referred to by him? Which acknowledgement? That he wants to depart. That's on page 130. Oh, that he wants to depart? He's claiming that he wants to depart, but that's in the transcript. That was in, if you'll just bear with me here for a moment, I'll pull it up. It's back in the earlier proceedings you're talking about. Exactly. That was in 2013. Yeah, that was in 2013. Well, that's what I'm asking you about. You seem to be focusing our attention on that as a clear indication that he was on notice of his opportunity to depart. Right. That's the entire appeal to the board. The board gave him what he wanted. He said that my proceedings should be terminated because I wasn't given a reasonable opportunity to depart, and the board granted his request and terminated the proceedings on the initial NTA. So that argument that he was given an opportunity to depart is what he successfully raised in his first proceeding, and again in his second proceeding when his second proceeding was terminated by the immigration judge. That was the entire basis of the reason the case was terminated. But he couldn't depart at that first moment, could he? Well, he was in custody at that time, and, well, that's what the agency has ultimately determined, that he wasn't able to depart or that there wasn't enough evidence to show that he'd been given a reasonable opportunity to depart. But now in his third proceedings, we do have evidence, right? And this is important because the court reviews findings of fact under the substantial evidence standard of review, and what that means is that the record has to compel a contrary conclusion to that of the agency. So what is the evidence in this case? Well, on the government side of the ledger, we have the affidavit from the deportation officer and the e-mail correspondence between the deportation officer and the petitioner's counsel showing that they were trying to arrange his departure and that the petitioner was being uncooperative. And on the petitioner's side of the ledger, there's nothing. He didn't submit any evidence. All of the allegations he's making now are allegations of counsel through pleadings, but allegations, statements of counsel through pleadings do not constitute evidence. So there's only evidence in favor of showing the reasonable opportunity to depart and no evidence to the contrary. Well, under those circumstances, under the standard of review, the court can't say that the record compels a finding that he wasn't given an opportunity to reasonably depart. The only evidence in the record supports the government's position. And that's the opportunity to depart. What about the note? How do you understand, I guess flowing from Badalamenti and the statute it's interpreting, whether and what kind of notice is required? Well, if the petitioner could plausibly claim that he was ‑‑ So actual notice is required? I would argue that no notice is required, even under Badalamenti, because what it is is the way it comes up in proceedings is the government charges somebody as inadmissible. Right? Now, as a matter of natural litigation in immigration proceedings, what will happen at that point is somebody will either concede that charge or they'll challenge that charge. So when you're charged with inadmissibility, one of the ways that somebody will defend themselves against a charge of inadmissibility is to say, wait a minute, I'm not inadmissible, I'm not an applicant for admission, I wasn't given an opportunity to reasonably depart. But I know of no authority that says that a specific written notice is required for that. Certainly. But notice needs to be given. Now, you're saying written notice does not need to be given, but I hear that you're saying notice does not need to be given, and my problem with that is the word given. It must be given a reasonable opportunity. And I can't take what I'm not given. If I don't know, if I'm not on notice of an opportunity, how in the world can I take it? The only notice that the petitioner is required to be given is notice of the charge of inadmissibility through the NTA. In other words, if the government charges somebody as inadmissible because it's deeming somebody an applicant for admission, that puts the petitioner on notice that he should be raising any defenses to that charge of inadmissibility. One of the defenses that somebody will raise often is that I'm not actually an applicant for admission because I was brought here against my will and I wasn't given an opportunity to depart. But I know of no authority in the law, certainly no statute or regulation, that says that the government, when they charge somebody as inadmissible, also has to tell them that they could have a defense to that charge because they weren't given an opportunity. That's something that the petitioner's counsel or the petitioner will raise in these cases as a defense to the charge of inadmissibility. But the only notice I know of is the notice required that they be notified of the charges against them. Is there a BIA decision that supports your contention? Set aside the written part, just the notice part. Notice that says that no notice is required for the badalamente? No. But I would respectfully point out that we do not interpret badalamente as requiring such a notice. Now, in that case, it may have come up and they may have terminated because the evidence at that point had not demonstrated whether there was an opportunity to reasonably depart. That's not the case we have here because the evidence here does show that there was an opportunity to depart. So that's the only reason badalamente is sent back. Just as a practical matter, let's assume you've got an unsophisticated individual and they've been extradited and they've been tried and they've served their sentence and they're still being detained. And isn't it logical for the government at that point to say, maybe it's logical but not compelled, but isn't it logical to say, okay, you've got this amount of time to depart or we're going to begin in admissibility proceedings? The problem with that is there's no direct exact amount either by statute or regulation that says what a reasonable opportunity to depart is. It's a creature of case law, so it will depend on the specific circumstances depending on what a judge might find. So in badalamente, in that situation, the individual was in custody and he argued that because I'm in custody, I don't have the opportunity to get the plane ticket or to arrange my departure. And the board said, okay, we'll send it back and we'll let the record develop to determine whether he's been given a reasonable opportunity to depart. Was that when he was released from custody after he made that argument? In badalamente, I don't remember if he had been- No, I'm talking about this petitioner. Yes, the petitioner has been released from custody because of, I believe, the COVID protocols. And a lot of people were being released from detention because of COVID and the concerns about the close proximity. So the question of whether he has the ability to get a plane ticket and arrange to leave is not before us, really. Right. Well, the only issue before you is the agency's finding that at the time of this proceeding, he had been given a reasonable opportunity to depart. And again, the only evidence in the record in there is from the government, the affidavit and the email correspondence, showing that the government tried to arrange his departure and that he was being uncooperative. So if he had been given a reasonable opportunity to depart, what- Well, I will ask the opposing counsel what relief she's asking for. Well, essentially, well, the relief that they seem to be suggesting through their race judicata argument is that if the government ever prematurely charges somebody, that the government should never be allowed to charge that person again, which is essentially what their race judicata argument is. We haven't really- didn't really touch on this in the opening presentation, but the government submits that race judicata is inapplicable here. I mean, the case law at certainly Badalamonte makes clear that at some point, somebody in petitioner situation becomes an applicant for admission. Right. And the board has said, well, that's when they're eventually given an opportunity to reasonably depart. Right. We submit the evidence shows that that happened in this case and that the record doesn't compel a reversal because there's no evidence in support of showing that he wasn't given a reasonable opportunity to depart. But, you know, and again, at one point in his proceedings, he told- his counsel told the immigration judge that he would need seven to ten days to reasonably be expected to depart. And we're now working on- When was that? That was- That's what I was asking you for, which is- That was- that's at one part of the transcript in the record. I can pull this up here. One moment. Maybe we do get up after and just point us to the part of the transcript. To the page. To the page after we hear from your friend. Okay. So unless the court has any further questions, then the government would submit on the briefs. Thank you. Thank you very much. I will. Counsel, tell me what relief you're seeking from us. Your Honor, we are asking that this premature notice to appear be dismissed. We're not saying that when a premature notice to appear is dismissed, the government can never issue a new one. We're suggesting that this present third notice to appear that was issued before the emails, before his release for the COVID pandemic, be dismissed as premature. The government is welcome to issue- So it was premature, but you don't deny that Mr. Gutierrez has actual notice. At this point, Your Honor, we do not deny that Mr. Gutierrez now has notice that he has a right to voluntarily depart. Okay, does an actual notice take precedence over statutory notice? I mean, he knows that he could depart, right? He presently knows that he could depart, but at the time that the third notice to appear was issued, charging him as inadmissible, he didn't know. Okay, so what relief are you asking for? We're asking for the dismissal of the current removal proceedings under the third notice to appear. Okay, so I started this discussion with you several minutes ago, it seems like days ago, to ask what assurance does the government have if we vacated the third removal proceeding that he would actually leave? Your Honor, the government has the ability to remove him. The government continues to have this ability. But he's asked to voluntarily remove himself. Yes, he has asked for the opportunity to voluntarily depart. I believe Your Honor is asking to say he doesn't take the opportunity. Hypothetically, the government would still be able to remove him. They would not be barred at that point by res judicata or by any other principle. So are you telling me that he's going to waive again his right to voluntarily depart? No, Your Honor, I'm not suggesting that. I'm saying that the government is claiming that he could have voluntarily departed, he hasn't. This means he won't leave and that these removal proceedings should just be used. Well, I'm asking you if you have any insight into whether he would actually leave. I haven't. If he gave you the relief that you're seeking. Your Honor, I haven't spoken with Mr. Gutierrez about this particular issue. Yeah, yeah. Okay. So you're asking us to dismiss the NTA. We're not in that business. What you're, I think, asking us is to grant the petition, right? We're asking that these removal proceedings be terminated, which is. . . Yeah, we're not in the business of terminating removal proceedings. You're asking us to grant the petition. Presumably then that would go back to the BIA and it could do what you went to, maybe the IJA. I don't know at what level, at the administrative level, this occurs. But you're asking us to grant a petition for review, correct? Yes, Your Honor. Okay. Now, the government pointed out something that I had not fully thought through, which is that the standard of review is, in essence, whether the record compels a conclusion that he was not given a reasonable opportunity to depart. Do you agree with that? Yes, Your Honor.  Yes. As he pointed out, and I'm very sympathetic to this perspective that you're advancing, but as he pointed out, there's a whole lot of evidence in favor of the government. What is the evidence to the contrary that would compel us to say everything on this side and every conclusion that's been drawn so far on this side is in total error? Your Honor, we believe that the evidence offered by the government is not actually evidence that he was given this reasonable opportunity to depart. My friend on the government side repeatedly talked about this 2013 case before the BIA. At that time, Mr. Gutierrez was in state custody serving a criminal sentence. The mere fact that he knew that at some point down the line he would have an opportunity to depart doesn't suggest that because he didn't leave in 2013, he suddenly became an applicant for admission. He couldn't leave. Even in 2019, he wasn't informed that he could leave and that the government would release him from custody or make any attempt to help him because he was in custody. What compels us to say that the BIA got it, that an agency got it wrong? That's my, I think, a straightforward question. Your Honor, we believe that there's no evidence in the record that suggests that Mr. Gutierrez received the badalamenti opportunity. That all of the evidence that the government points to is very general evidence that he had the knowledge of a general right, but not that he could take advantage of it at this time. And that's what badalamenti requires. And that's why we believe that there's nothing in the record that would support the BIA's finding here, especially the November 22 email, which is relied upon in the IJ's decision and the BIA's affirmation. That doesn't affect the third notice to appear at the time it was issued. I suppose the last thing I want to ask is there's just a little bit of a through the looking glass feeling here. I mean, I wonder even if now, if the government says now, as they just have on the record, nothing impedes your client from leaving, so he can leave now. And this goes away. In the old days, I would have put you in the jury room and had you work it out. Apparently, that can happen. But you're not prepared to make representation. If the government were to say, okay, look, now he's on actual notice, as we know. He has notice. We'll give you a week to give us a plan for his leaving and a month for him to leave. We'll take advantage of that, and this will be done. You're not prepared to have any kind of conversation with the government along those lines. We're not making any representation about that. I think what my colleague said was that he could leave and that the removal proceedings would still continue. That is, he could still be found inadmissible following leaving. And I think my client is very concerned about being found inadmissible in such a proceeding because down the line, should he attempt to apply for a waiver to reenter. If they made the same offer now that they made during the third NTA proceeding, will dissolve without prejudice the inadmissibility proceeding, dismiss the NTA, so long as he leaves, gives us a plan within a certain amount of time and leaves within a certain amount of time. Would you take advantage of that? Your Honor, I would have to discuss it with my client, but I think he would consider taking advantage of that offer. That wasn't what the government was claiming was possible just now. Okay. Thank you very much, Governor. Your Honor, as per a specific site to what I was referencing, it's on page 175 of the record. It's a transcript dated December 12th of 2011, so more than a decade ago. Petitioner's counsel represented the immigration judge. If he's released by the state authorities, if and when, ask the court to allow him to withdraw his supposed application for admission and to depart on his own. We cannot obviously put forth when that is, but we would ask the court to order that within a reasonable amount of time, say seven to ten days, to depart the country voluntarily and to have these proceedings- What page is that? 175 of the record. That was more than a decade ago. I was confused, I think, because you mentioned 2013, but that's 2011. Right. 2011. All right. Thank you. Thank you. Thank you. Very well argued on both sides.